UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINGO L. CLEVELAND, SR.,<br><br>Plaintiff,<br><br>v.<br><br>JANSSEN PHARMACEUTICALS,<br><br>Defendant. | No. 2:16-cv-02308 MCE AC PS<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a prisoner proceeding in this action pro se, and the case was accordingly referred to the undersigned by Local Rule 302(c)(21). This matter is before the court on a motion for summary judgment brought by defendant Janssen Pharmaceuticals. ECF No. 93. Plaintiff has opposed the motion (ECF No. 107) and defendant has filed a reply (ECF No. 108). Plaintiff has filed a motion to file a sur-reply (ECF No. 109) which defendant opposes (ECF No. 110). The undersigned will GRANT plaintiff's motion to file a sur-reply. For the reasons stated below, it is recommended that defendant's motion for summary judgment be GRANTED.

This case was filed on September 27, 2016, ECF No. 1, and proceeds on the Second Amended Complaint ("SAC"), ECF No. 12. Plaintiff alleges that he suffered the side effect of gynecomastia from taking defendant's drug Risperdal. ECF No. 12. The undersigned ordered that a settlement conference take place, and appointed counsel to represent plaintiff for the limited purpose of the settlement conference. ECF No. 36. Settlement negotiations failed and plaintiff

1

resumed pro se status. ECF No. 54, 60. The parties proceeded through the discovery process and on July 8, 2019, defendant filed the instant motion for summary judgment. ECF No. 93. Plaintiff was given two extensions of time to oppose the motion (ECF Nos. 99 and 106), filing his opposition on October 9, 2019. ECF No. 107. The motion is fully briefed.

### I. Plaintiff's Sur-Reply

On November 1, 2019, plaintiff filed a motion to file a sur-reply, which contained the proffered sur-reply and responses to defendant's statement of undisputed facts. ECF No. 109. Defendant objects to the sur-reply and asks the court to strike the filing. ECF No. 110. The decision as to whether to allow a surreply is within the court's discretion, though the discretion should only be exercised in favor of allowing the surreply when there is a valid reason for the additional briefing. Hill v. England, 2:05-cv-0869-REC-TAG, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005). Here, additional briefing is warranted because only in the surreply does plaintiff contribute to the statement of undisputed facts. Accordingly, and because it is in the interest of justice to fully consider plaintiff's case on the merits, the court exercises its discretion in favor of allowing the surreply. The filing at ECF No. 109 has been fully considered in evaluating defendant's motion for summary judgment.

### II. Standard for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls

v. Cent. Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

### III. Statement of Undisputed Facts

Unless otherwise specified, the following facts are either expressly undisputed by the parties or have been determined by the court, upon a full review of the record, to be undisputed by competent evidence.[1]

Plaintiff was first prescribed the drug Risperdal in 2005 to treat schizophrenia while at Mule Creek State Prison; the medication was prescribed because plaintiff was suffering auditory hallucinations, major depression, and recurrent bipolar disorder symptoms. Deposition of Domingo Cleveland, Sr., taken February 25, 2019, ("D. Cleveland Depo. Tr."), Ex. 1 to Barkeshli Decl. at 38:1-21; RJD Inpatient Medical Records, Ex. 29 to Barkeshli Decl. at DC:RJD:INPATIENT:000441-466. Plaintiff took Risperdal regularly from 2005 through 2018, at which point he asked to be taken off the medication. D. Cleveland Depo. Tr., Ex. 1 to Barkeshli Decl. at 40:7-12; 42:10-14. Plaintiff has alleged that defendant "never warned nor informed it [sic] consumers of the side effect of gynecomastia with taken [sic] Risperdal." ECF No. 12 at 1-2.

The drug Risperdal was approved by the United States Food and Drug Administration ("FDA") in 1993 for use in "management of the manifestations of psychotic disorders" for adults

---

[1] Defendant's statement of undisputed facts is located at ECF No. 93-2, and is supported by evidence submitted as exhibits. See ECF Nos. 93-3 through 93-5 (exhibits 1-35). Plaintiff did not initially submit a statement of undisputed facts or specifically contest defendant's statement of undisputed facts, but he did respond to the motion for summary judgment and attached several exhibits as evidence. ECF No. 107 at 10-88 (exhibits). In surreply, plaintiff submitted his responses to the defendant's statement of undisputed facts. ECF No. 109 at 16-19.

with schizophrenia and other psychotic disorders, and has since been approved for various other indications, such as schizophrenia (2002), bipolar mania (2003), child and adolescent autism (2006), child and adolescent bipolar mania (2007), and adolescent schizophrenia (2007). December 1993 Risperdal package insert, at JJRIS02702629-34, Ex. 8 to Barkeshli Decl.; February 2002 Risperdal Tablets package insert, at JJRIS 02702735-46, Ex. 9 to Barkeshli Decl.; December 2003 Risperdal Tablets package insert, at JJRIS 02702787-805, Ex. 10 to Barkeshli Decl.; October 2006 Risperdal Tablets package insert, at JJRIS 02943546-53, Ex. 11 to Barkeshli Decl.; August 2007 Risperdal Tablets package insert, at JJRE 13368103-50, Ex. 12 to Barkeshli Decl. When Risperdal was initially approved in 1993, the FDA approved label included a warning regarding gynecomastia and the risk of hyperprolactinemia or elevated prolactin as follows:

> **Precautions**
>
> Hyperprolactinemia: As with other drugs that antagonize dopamine D2 receptors, risperidone elevates prolactin levels and the elevation persists during chronic administration…. Although disturbances such as galactorrhea, amenorrhea, gynecomastia, and impotence have been reported with prolactin-elevating compounds, the clinical significance of elevated serum prolactin levels is unknown for most patients.
>
> . . .
>
> Endocrine Disorders: Rare: gynecomastia, male breast pain, antidiuretic hormone disorder.

December 1993 Risperdal® Tablets package insert, at JJRIS02702629-34, Ex. 8 to Barkeshli Decl.

The Risperdal label approved in 2005 also listed gynecomastia and male breast pain as potential (rare) adverse reactions under "endocrine disorders." May 2005 Risperdal Tablets Package insert, at JJRIS02943579-88, Ex. 13 to Barkeshli Decl. The Risperdal labels approved in 2007, 2008, and 2009 also listed gynecomastia as potential side effects under "endocrine disorders." August 2007 Risperdal Tablets package insert, at JJRE 13368103-50, Ex. 12 to Barkeshli Decl.; August 2008 Risperdal Tablets package insert, at JJRIS 03129562-73, Ex. 14 to Barkeshli Decl.; July 2009 Risperdal Tablets package insert, at JJRIS 03467251-64 Ex. 15 to

Barkeshli Decl. The 2011 Risperdal label continued to contain the same warning for gynecomastia. In addition, the 2011 label included additional language based on more-recent clinical trials. December 2010 Risperdal Tablets package insert, at DC6256.7-D6256.11, Ex. 16 to Barkeshli Decl. The Risperdal labels in effect during 2012-2018 contained identical warnings for gynecomastia as those described above for the 2011 label. July 2012 Risperdal Tablets package insert, at 1-57, Ex. 17 to Barkeshli Decl.; November 2013 Risperdal Tablets package insert, at JJRIS03970017-74, Ex. 18 to Barkeshli Decl.; April 2014 Risperdal Tablets package insert, at JJRIS03970075-132, Ex. 19 to Barkeshli Decl.; March 2016 Risperdal Tablets package insert, at JJRIS 03970191-247, Ex. 20 to Barkeshli Decl.; February 2017 Risperdal Tablets package insert, at pages 1- 58, Ex. 21 to Barkeshli Decl.; July 2018 Risperdal Tablets package insert, at pages 1-56, Ex. 22 to Barkeshli Decl.

Dr. Kazi Rahman is a prison psychiatrist who signed off on the continuing prescription of Risperdal to plaintiff in April 2015. Deposition Transcript of Dr. Kazi Rahman, taken March 27, 2019 ("K. Rahman Depo. Tr."), Ex. 7 to Barkeshli Decl. at 14:15-18; 17:7-8; 79:15-80:16. Dr. Rahman testified that he learned gynecomastia could be a potential risk of Risperdal use while he was training in medical school before 2001, and that the possibility that Risperdal use could cause gynecomastia was well known in the medical community before 2005. K. Rahman Depo. Tr., Ex. 7 to Barkeshli Decl. at 55:8-56:19. Dr. Rahman testified that the custom and practice in the psychiatric community before prescribing any medication, including antipsychotic medications like Risperdal, is for the prescribing physician to conduct a risk-benefit analysis, and with Risperdal, that would include the possibility that the patient could develop gynecomastia as well as more serious conditions like neuroleptic malignant syndrome and tardive dyskinesia. Id. at 90:16-91:2; 44:13-46:2; 49:2-50:22; 51:21-52:1. Dr. Rahman was personally aware of the risk of gynecomastia when he conducted his risk-benefit analysis and prescribed Risperdal to plaintiff in April 2015. Id. at 55:8-56:19.

The FDA has characterized gynecomastia as a nonserious risk. Byrd v. Janssen Pharm., Inc., 333 F.Supp.3d 111, 124 (N.D.N.Y. 2018); November 25, 2014 Letter from Dr. Janet Woodcock to Stephen Sheller, Ex. 24 to Barkeshli Decl., at 7. Plaintiff has failed to offer any

testimony from any of his prescribers that a different warning about gynecomastia would have changed their decision to prescribe him Risperdal. ¶ 43 of Barkeshli Decl.; ECF No. 107. Plaintiff first sought medical care for his breast in February 2014, where a diagnostic test revealed a benign asymmetry in his left breast consistent with gynecomastia. LAC USC Medical Center Records, Tag 3, Ex. 25 to Barkeshli Decl., at DC12:LUM:0440. As of April 2015, plaintiff weighed as much as 233 pounds, standing at a height of 5 feet and 9 inches. Mule Creek State Prison Inmate Records, Tag 30, Ex. 26 to Barkeshli Decl., at DC12:MCS[i]1655, DC12:MCS[i]1657.

Though the term gynecomastia is referenced in the notes of Dr. Nima Kabirian Dehkordi regarding plaintiff's ultrasound, plaintiff was not verbally told he had gynecomastia. D. Cleveland Depo. Tr., Ex. 1 to Barkeshli Decl. at 93:18-25; Deposition Transcript of Dr. Nima Kabirian Dehkordi, taken March 22, 2019 ("N. Dehkordi Depo. Tr."), Ex. 5 to Barkeshli Decl. at 41:3-12; 42:5-15. Dr. Bryan Chow examined plaintiff and reviewed his radiology results in July 2014 and though his records reflected prominent gynecomastia bilaterally, he testified that he could not determine whether the gynecomastia was caused by Risperdal use. Deposition Transcript of Dr. Bryan Chow, taken January 30, 2018 ("B. Chow Depo. Tr."), Ex. 6 to Barkeshli Decl., at 42:16-22; 44:16-45:1; 52:13-15; 55:2-56:17; 59:8-12; 61:19-24.

No medical records presented to the court conclude that Risperdal caused plaintiff to suffer gynecomastia. ¶ 42 of Barkeshli Decl. None of Plaintiff's doctors have testified that his alleged gynecomastia was caused by Risperdal use. ¶ 40 of Barkeshli Decl.; N. Dehkordi Depo. Tr., Ex. 5 to Barkeshli Decl. at 41:3-12, 42:5-15; B. Chow Depo. Tr., Ex. 6 to Barkeshli Decl., at 61:19-24. Plaintiff has proffered no medical expert to offer a medical causation opinion within a reasonable probability that plaintiff has gynecomastia from his use of Risperdal. ¶ 41 of Barkeshli Decl. Plaintiff has offered no testimony from any of his providers that a different warning about gynecomastia would have changed their decision to prescribe him Risperdal. ¶ 43 Barkeshli Decl. Plaintiff was prescribed several drugs between 2004 and 2006 in addition to Risperdal which warn of gynecomastia as a potential side effect, including Geodon, Zoloft, Prozac, Seroquel, and Zyprexa. Geodon 2019 PDR Label, Ex. 30 to Barkeshli Decl.; Zoloft 2019

PDR Label, Ex. 31 to Barkeshli Decl.; Prozac 2019 PDR Label, Ex. 32 to Barkeshli Decl.; Seroquel 2019 PDR Label, Ex. 33 to Barkeshli Decl.; Zyprexa 2018 PDR Label, Ex. 35 to Barkeshli Decl.

### III. Analysis

This case is brought pursuant to the court's diversity jurisdiction, and seeks damages under a theory of failure to warn. SAC at 1, 3. "[F]ederal courts sitting in diversity cases, when deciding questions of 'substantive' law, are bound by state court decisions as well as state statutes." Hanna v. Plumer, 380 U.S. 460, 465 (1965).

Plaintiff alleges that defendant failed to warn him about the risk of developing gynecomastia from taking Risperdal. ECF No. 107 at 1. "Generally speaking, manufacturers have a duty to warn customers about the hazards inherent in their products." Johnson v. American Standard, Inc., 43 Cal.4th 56, 64 (2008) (citation omitted). "[L]iability for failure to warn is conditioned upon the manufacturer's actual or constructive knowledge of the risk." Webb v. Special Electric Co., Inc., 63 Cal.4th 167, 181 (2016) (citing Anderson v. Owens-Corning Fiberglas Corp., 53 Cal. 987, 997 (1991)). "In general, a product seller will be strictly liable for failure to warn if a warning was feasible and the absence of warning caused plaintiff's injury." Id. (citing Blackwell v. Phelps Dodge Corp., 203 Cal.Rptr. 706, 710 (Cal.App. 1984)).

"California follows the learned intermediary doctrine, which states that in the case of prescription drugs, the duty to warn 'runs to the physician, not the patient.'" Motus v. Pfizer Inc., 196 F.Supp.2d 984, 991 (C.D. Cal. 2001), aff'd (9th Cir. 2004) 358 F.3d 659 (quoting Carlin v. the Superior Court of Sutter County, 13 Cal.4th 1104, 1116 (Cal. 1996)). "Thus, a manufacturer discharges its duty to warn if it provides adequate warnings to the physician about any known or reasonably knowable dangerous side effects, regardless of whether the warning reaches the patient." Id. "A plaintiff asserting causes of action based on a failure to warn must prove not only that no warning was provided or the warning was inadequate, but also that the inadequacy or absence of the warning caused the plaintiff's injury." Motus, 196 F. Supp. 2d at 991 (citing Plummer v. Lederle Labs., 819 F.2d 349, 358 (2d Cir. 1987); Kirsch v. Picker Int'l, 753 F.2d 670, 671 (8th Cir. 1985); Stanback v. Parke, Davis & Co., 657 F.2d 642, 645 (4th Cir. 1981)).

1   Here, based on a review of all evidence submitted, the court concludes that plaintiff cannot demonstrate that the warnings as to the risks of gynecomastia associated with Risperdal were inadequate as to plaintiff's physicians or that a different warning would have changed plaintiff's physicians' decision to prescribe Risperdal.

a. Risperdal's Warnings

Defendant has submitted clear evidence that at all relevant times, the label for Risperdal warned of the risk of gynecomastia based on its approved indication. See May 2005 Risperdal Tablets Package insert, at JJRIS02943579-88, Ex. 13 to Barkeshli Decl.; August 2007 Risperdal Tablets package insert, at JJRE 13368103-50, Ex. 12 to Barkeshli Decl.; August 2008 Risperdal Tablets package insert, at JJRIS 03129562-73, Ex. 14 to Barkeshli Decl.; July 2009 Risperdal Tablets package insert, at JJRIS 03467251-64 Ex. 15 to Barkeshli Decl.; December 2010 Risperdal Tablets package insert, at DC6256.7-D6256.11, Ex. 16 to Barkeshli Decl.; July 2012 Risperdal Tablets package insert, at 1-57, Ex. 17 to Barkeshli Decl.; November 2013 Risperdal Tablets package insert, at JJRIS03970017-74, Ex. 18 to Barkeshli Decl.; April 2014 Risperdal Tablets package insert, at JJRIS03970075-132, Ex. 19 to Barkeshli Decl.; March 2016 Risperdal Tablets package insert, at JJRIS 03970191-247, Ex. 20 to Barkeshli Decl.; February 2017 Risperdal Tablets package insert, at pages 1- 58, Ex. 21 to Barkeshli Decl.; July 2018 Risperdal Tablets package insert, at pages 1-56, Ex. 22 to Barkeshli Decl.

At the time plaintiff was first prescribed the medication in 2005, the Risperdal label listed gynecomastia and male breast pain as a potential endocrine side effect. May 2005 Risperdal Tablets Package insert, at JJRIS02943588, Ex. 13 to Barkeshli Decl. Plaintiff has identified no evidence that this warning or any warning in subsequent years was either inadequate or inaccurate. In fact, at least one court has concluded that the Risperdal label was adequate as a matter of law in disclosing the risk of gynecomastia. See Apel v. Johnson & Johnson, No. MID–L–10623–09–MT, 2014 WL 10176352, at *16 (N.J. Super. Ct. July 25, 2014) (focusing on the 2006 Risperdal label that was in effect in 2007). The court finds that plaintiff has not identified a triable issue of fact regarding the sufficiency of defendant's warnings for Risperdal.

////

b. Physicians' Decisions

The Ninth Circuit has concluded that a product defect/failure to warn claim cannot survive summary judgment under California law if stronger warnings would not have altered the conduct of the prescribing physician. See Motus, 358 F.3d at 661 (affirming grant of summary judgment for defendant where plaintiff "failed to establish proof that stronger warnings would have changed her husband's medical treatment"); see also Ramirez v. Plough, Inc., 6 Cal.4th 539, 556 (1993) ("[T]here is no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury."). A plaintiff cannot prove that an allegedly inadequate warning was the proximate cause of his or her injury if the treating physician knew of the risk of harm plaintiff alleges to have suffered and prescribed the medication anyway. See Plummer, 819 F.2d at 359 (applying California law, remarking that "no one needs notice of that which he already knows"). Here, at least one of plaintiff's prescribing physicians testified that they were personally aware of the risk of gynecomastia when they prescribed Risperdal to plaintiff. Rahman Depo. Tr., Ex. 7 to Barkeshli Decl. at 55:8-56:19. Plaintiff has not provided any evidence suggesting that any of his physicians were not aware that Risperdal use carried the risk of gynecomastia; indeed, plaintiff specifically agreed to this lack of evidence in his responses to defendant's statement of undisputed facts. ECF No. 109 at 17. For this reason, plaintiff's claim cannot survive under the learned intermediary doctrine. Summary judgment must be granted in favor of defendant as to plaintiff's only cause of action.

## IV. Conclusion

Accordingly, for the reasons explained above, IT IS ORDERED that plaintiff's motion to file a sur-reply (ECF No. 109) is GRANTED.

Further, it is HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 93) be GRANTED, that judgment be entered in favor of defendant, and that this case be CLOSED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: November 15, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE